## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

Linda Steffes and Brandon Bourgeois,
on behalf of themselves and all others
similarly situated,

    Plaintiffs,

  v.

UV Real Estate LLC, and Yuval
Rachmilewitz,

    Defendants.

CASE NO.

CLASS ACTION COMPLAINT

<u>JURY TRIAL DEMANDED</u>

### Nature of this Action

1. Linda Steffes and Brandon Bourgeois ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this class action against UV Real Estate LLC ("UV") and Yuval Rachmilewitz (together, "Defendants") under the Telephone Consumer Protection Act ("TCPA").

2. Upon information and belief, Defendants routinely violate 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2) by delivering more than one advertisement or marketing text message to residential or cellular telephone numbers registered with the National Do-Not-Call Registry ("DNC Registry") without the prior express invitation or permission required by the TCPA.

3. Additionally, upon information and belief, Defendants routinely violate 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d)(4) by delivering more than one

1

advertisement or telemarketing message to residential or cellular telephone numbers while failing to identify "the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."

## Parties

4.      Ms. Steffes is a natural person who resides in the City of Wyandotte, County of Wayne and State of Michigan.

5.      Mr. Bourgeois is a natural person who resides in the City of Mentor, County of Lake and State of Ohio.

6.      UV is a Michigan limited liability company that runs a marketing and real estate business in Dearborn, Michigan.

7.      Yuval Rachmilewitz is the sole owner and manager of UV, and is a self-proclaimed real estate investor and wholesaler.

8.      Upon information and belief, Mr. Rachmilewitz is a resident of Dearborn, Michigan, because he provides a Dearborn, Michigan address for his address in the Articles of Organization for UV.

## Jurisdiction and Venue

9.      This Court has subject matter jurisdiction under 47 U.S.C. § 227(c)(5), and 28 U.S.C. § 1331.

10.     Venue is proper before this Court under to 28 U.S.C. § 1391 (b)(1) and

(b)(2) as Ms. Steffes and Defendants reside in this district and a significant portion of the transactions giving rise to this action occurred in this district.

11.    In particular, Defendants directed their text messages to Plaintiffs' telephones from this district, and Ms. Steffes received those messages in this district.

## Factual Allegations

12.    Ms. Steffes is, and has been at all times relevant to this action, the regular and sole user of her cellular telephone number—(734) 771-XXXX.

13.    Ms. Steffes uses her cellular telephone as her personal residential telephone number.

14.    Mr. Bourgeois is, and has been at all times relevant to this action, the regular and sole user of his cellular telephone number—(574) 226-XXXX.

15.    Mr. Bourgeois uses his cellular telephone as his personal residential telephone number.

16.    In 2003, the Federal Communications Commission ("FCC") ruled that cellular telephone numbers that are placed on the DNC registry are presumed to be residential. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003).

17.    Ms. Steffes registered her cellular telephone number with the DNC Registry on February 3, 2018, and has maintained that registration through the present date.

18.    Mr. Bourgeois registered his cellular telephone number with the DNC Registry on September 22, 2007, and has maintained that registration through the present date.

19.    Starting in March 2025, Ms. Steffes received at least three text messages from (248) 206-0336, each seeking to solicit Ms. Steffes to either sell her home or use the seller's services in the sale of her home:



20.    Ms. Steffes did not recognize the sender, is not selling her home, and was not looking to sell her home.

21.     Similarly, starting in February 2025, Mr. Bourgeois received at least three text messages from (440) 230-6685, each seeking to solicit Mr. Bourgeois to either sell his home or use the seller's services in the sale of his home:



22.     Mr. Bourgeois did not recognize the sender, is not selling his home, and was not looking to sell his home.

23.     Plaintiffs did not request any real estate services discussed in the subject text messages.

24.    "FairField Realty" (or "FairField") is a fictitious entity, and part of a network of similar fictitious entities that all engage in lengthy endeavors to obfuscate their identity.

25.    The FairField Realty website—https://realtyfairfield.com/—represents that the entity offers a "[h]assle-free path for selling your residential properties."

26.    The website lists two "coworking" spaces as the addresses for FairField Realty: 206 E Huron St, Ann Arbor, MI 48104, and 6605 Longshore St., Suite 240, Dublin, Columbus, OH.

27.    The website does not provide the name of any entity registered to do business in Michigan or Ohio.

28.    When a user clicks on the "What We Do" page on that website, the user is redirected to https://homeflexsolutions.com.

29.    HomeFlex Solutions is yet another fictitious entity that is not registered to do business in Michigan or Ohio, and again provides coworking spaces as its addresses: 111 S Main St Third Floor, Ann Arbor, MI 48104, and 4200 Regent St Suite 200, Columbus, OH 43219.

30.    Upon information and belief, FairField Realty and HomeFlex Solutions are but two of many different fictitious entities established by Defendants.

31.     Plaintiffs, through their counsel, attempted to investigate the identity of the owner of that website by submitting an inquiry through the HomeFlex Solutions page, and thereafter received a text message from *yet another* fictitious entity named TLM Capital:



32.     Like the prior websites, TLM Capital also has a website— https://michigan.tlmcapitals.com/—that fails to disclose its identity, and provides only coworking spaces as its address: 455 E Eisenhower Pkwy, Ann Arbor, MI 4810[sic].

33.     Moreover, the TLM Capital "Privacy Policy" in turn references HomeFlex Solutions, just like FairField Realty's website.[1]

---

[1]     https://michigan.tlmcapitals.com/privacy-policy/ (last visited April 22, 2025).

34.     Upon information and belief, Defendants prepared the same or similar privacy policies for TLM Capital, FairField Realty, and HomeFlex Solutions, among others.

35.     Given the circular references, the hidden addresses, and the repeated use of unregistered DBAs like TLM Capital, HomeFlex Solutions, and FairField Realty to mask the identity of the entity delivering these text messages, Plaintiffs, through their counsel, retained a private investigator who feigned interest in Defendants' services by submitting an inquiry on the FairField Realty website.

36.     Within an hour, Plaintiffs' investigator received a call from an "Allen" seeking to purchase the investigator's home for a substantial discount on its fair market value, in exchange for the caller handling all aspects of the transaction that would otherwise be performed by a real estate agent.

37.     The investigator then received an "Agreement to Purchase Real Estate" naming Defendants as the entities that would be engaging in the transaction, with Mr. Rachmilewitz as the buyer, and UV as the "assignor" of the purchase:

**11. REVIEW:** Upon acceptance, the Buyer is to review property tax information, public records data, zoning, and valuation and may perform another physical inspection of the property. If the Buyer is dissatisfied with the review results for any reason, the Buyer may terminate this agreement seller will be notified in writing upon review completion (typically 24 - 48 hours after photos of the property are taken)

**12. ADDITIONAL TERMS**: If any additional terms contradict any standard terms of this agreement, the additional terms shall replace the standard terms.

_____

_____

**13. AGREEMENT OF PARTIES:** This agreement contains the entire agreement of the parties and cannot be changed except by their written agreement.



Seller_____     Date█████2025

Assignor:___███████████████
Manager:___███████████████

Buyer_____*Yuval Rachmilewitz*_____     Date█████2025

Assignor:__ UV Real Estate LLC ____
Manager:__ Yuval Rachmilewitz____.



TLM   📞 +1 (213) 283-0769   🌐 office@tlmcapitals.com   📍 455 E. Eisenhower Pkwy. Suite 300 Ann Arbor, MI 48108

> 38.      Moreover, the purchase agreement identifies "TLM Capital" at the base of the signature page.

> 39.      Upon information and belief, UV is a real estate investor that seeks to solicit homeowners to sell their property to UV, or use UV's real estate services in

a real estate property sale transaction.

40.     In doing so, UV offers to purchase homeowners' properties for cash, offering to take care of all aspects of the transaction to facilitate a quick transaction without the need for a real estate agent or MLS listing.[2]

41.     UV's website— https://uv-realestate.com/—also advertises that it pairs numerous implicit and explicit services with its offers to purchase properties from consumers, such as inspections, appraisals, the handling of purchase paperwork, and title and escrow services.

42.     Upon information and belief, in exchange for providing these services, UV pays substantially below fair market value for the homes it seeks to purchase, and thereafter remarkets the property to third-party investors or purchasers.

43.     In fact, after acquiring a property, or merely an agreement to purchase the property at a specific price, UV attempts to remarket the property to third party purchasers, such as on Facebook investor pages[3] and real estate websites.[4]

---

[2]     https://realtyfairfield.com/ (last visited April 22, 2025).

[3]     https://www.facebook.com/groups/detroit.michigan.real.estate.investing/posts/1504630586675224/ (last visited April 22, 2025).

[4]     https://investorlift.com/property/195117/oakland-county-village-of-clarkston-mi-48348 (last visited April 22, 2025).

44.     Moreover, UV makes available to the public a live Google spreadsheet

detailing all of its properties for sale (or assignment), including the following:[5]



---

[5]     https://docs.google.com/spreadsheets/d/1-4J8rKetpJhCI_hLyvY-
ZqALxWija16z8sXxbuUpEVw/edit?fbclid=IwY2xjawJRSR5IeHRuA2FlbQIxMA
ABHes3IQlJnj1M9aSRUBY5PhKHc2v0ikPtjjf5x42St-
BrV0JzLpdnd2XMjw_aem_D35zn1c-ho0RvpiDQSm2UA&gid=0#gid=0     (last
visited April 3, 2025).

45.     UV invites interested investors to contact UV via text message, phone call, or email in order to assign those investors residential properties identified through telemarketing efforts.

46.     In other words, UV is a real estate wholesaler, which is a commonly-used strategy to (1) persuade a homeowner to sell their home to the wholesaler at a substantial discount below fair market value, in exchange for a suite of services to ease the sale, then (2) prior to completing the purchase, remarket the property to third-party purchasers or investors, in order to (3) assign or sell the contract to that investor for a substantial premium, thereby allowing the investor to step into UV's shoes and acquire the house instead, with the difference in price solely allocated to UV as profit, instead of the homeowner.

47.     As part of these efforts, UV necessarily offers to pair numerous services offered by a real estate agent—appraising the fair market value of the property, arranging for title and escrow services, and finding interested third-party purchasers, akin to a conventional real estate agent—with its communications to Plaintiffs.[6]

48.     Upon information and belief, UV seeks to supplant the role of a traditional real estate agent while providing the same services as a real estate agent,

---

[6]     *See, e.g.*, https://www.liveabout.com/what-real-estate-agents-do-2866370 (noting that real estate agents assist home sellers by, among other things, "[d]etermin[ing] the home's value in the current market"; "[c]oordinat[ing] the process from signing the contract to closing the deal, including scheduling inspections, preparing documents and other items necessary to close"; and "help[ing] the seller to try to get the price they want and to obtain a signed purchase agreement.") (last visited April 22, 2025).

and in exchange for doing so, is compensated by obtaining a homeowner's property at a reduced price, and thereafter selling it at an inflated price.

49.    As a result, UV would be (and, upon belief and information, is) compensated for its services in an analogous manner to a real estate agent: after providing services to facilitate the transaction, receiving compensation from the proceeds related to the buying or selling of a home.

50.    Plaintiffs did not give UV prior express consent or prior express written consent to send text messages to their cellular telephone numbers.

51.    The text messages at issue were sent for non-emergency purposes.

52.    Upon information and belief, the text messages at issue were sent by UV voluntarily.

53.    The purpose of the text messages at issue was to advertise and to market UV's business or services.

54.    Additionally, upon information and belief, UV also collects motivated seller consumer data and resells that information to investors, including by way of executing assignment contracts.

55.    As a result, UV either (1) solicited Plaintiffs to sell their homes to it at a discount in order for UV to resell or rent Plaintiffs' home, or (2) solicited Plaintiffs to submit their information to UV's lead generation service and, if Plaintiffs

expressed an interest in selling their homes, UV would then sell that via an assignment contract to investors for a profit.

56.     In fact, UV expressly acknowledges that it may share Plaintiffs' and other consumers' information with other entities in its privacy policy page.[7]

57.     Plaintiffs did not give UV prior express invitation or permission to send advertisement or marketing text messages to their cellular telephone numbers.

58.     Plaintiffs suffered actual harm as a result of the text messages at issue in that they suffered an invasion of privacy, an intrusion into their life, and a private nuisance.

59.     Plaintiffs suffered additional harm due to their frustration and difficulty in identifying the entity and persons responsible for the unwanted advertisement or marketing text messages to their cellular telephone numbers.

60.     Upon information and belief, UV knew, or should have known, that Plaintiffs registered their cellular telephone numbers with the DNC Registry.

61.     Mr. Rachmilewitz is the sole owner and manager of UV, and is the person who specifically executes the contracts to purchase houses as both the manager of UV, and the "buyer" of the property.

---

[7]     https://realtyfairfield.com/privacy-policy (last visited April 22, 2025).

62.     Mr. Rachmilewitz also advertises the properties he acquires for sale or assignment to third parties.

63.     Therefore, Mr. Rachmilewitz is the beneficiary of UV's conduct, and upon information and belief, given his control of all aspects of UV's operations, he also enacted UV's campaign of telemarketing without obtaining consent, and the use of numerous fake d/b/as and associated websites to cover UV's tracks and conceal its identity.

**Class Action Allegations**

64.     Plaintiffs bring this action under Federal Rule of Civil Procedure 23, and as representatives of the following classes (the "Classes"):

**Federal Do-Not-Call Registry Class:**

All persons throughout the United States (1) to whom UV Real Estate LLC placed, or caused to be placed, more than one call within a 12-month period, promoting UV Real Estate LLC's, or their business partners' goods or services, (2) where the person's residential or cellular telephone number had been registered with the National Do Not Call Registry for at least thirty days before UV Real Estate LLC placed, or caused to be placed, at least two of the telephone calls within the 12-month period, (3) within four years preceding the date of this complaint through the date of class certification.

**Sender Identification Class:**

All persons and entities throughout the United States (1) to whom UV Real Estate LLC placed, or caused to be placed, more than one call within a 12-month period, promoting UV Real Estate LLC's, or their business partners' goods or services, (2) where the subject calls did not state the name of the individual caller, the name of UV Real Estate LLC, and a telephone number or address at which UV Real Estate LLC may be contacted, (3) within four years preceding the date of this complaint through the date of class certification.

65.    Excluded from the Classes are Defendants, UV's officers and directors, members of their or Mr. Rachmilewitz's immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

66.    Upon information and belief, the members of the Classes are so numerous that joinder of all of them is impracticable.

67.    The exact number of members of the Classes are unknown to Plaintiffs at this time, and can be determined only through appropriate discovery.

68.    The members of the Classes are ascertainable because the Classes are defined by reference to objective criteria.

69.    In addition, the members of the Classes are identifiable in that, upon information and belief, their telephone numbers, names, and addresses can be identified in business records maintained by Defendants, and by third parties, including members of the Classes.

70.    Plaintiffs' claims are typical of the claims of the members of the Classes.

71.    As they did for all members of the Federal Do-Not-Call Registry Class, Defendants sent solicitation text messages to Plaintiffs' telephone numbers more than thirty days after Plaintiffs registered their cellular telephone numbers with the DNC Registry.

72.     As they did for all members of the Sender Identification Class, Defendants sent solicitation text messages to Plaintiffs' telephone numbers where the subject text messages did not state the name of the individual caller, the name of UV, and a telephone number or address at which UV may be contacted.

73.     Plaintiffs' claims, and the claims of the members of the Classes, originate from the same conduct, practice, and procedure on the part of Defendants.

74.     Plaintiffs' claims are based on the same theories as are the claims of the members of the Classes.

75.     Plaintiffs suffered the same injuries as the members of the Classes.

76.     Plaintiffs will fairly and adequately protect the interests of the members of the Classes.

77.     Plaintiffs' interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the Classes.

78.     Plaintiffs will vigorously pursue the claims of the members of the Classes.

79.     Plaintiffs have retained counsel experienced and competent in class action litigation.

80.     Plaintiffs' counsel will vigorously pursue this matter.

81.     Plaintiffs' counsel will assert, protect, and otherwise represent the members of the Classes.

82. The questions of law and fact common to the members of the Classes predominate over questions that may affect individual members of the Classes.

83. Issues of law and fact common to all members of the Classes include:

a. For the Federal Do-Not-Call Registry Class, Defendants' practice of sending text messages, for solicitation purposes, to telephone numbers already registered on the DNC Registry for more than thirty days;

b. For the Sender Identification Class, Defendants' practice of sending text messages, for solicitation purposes, without identifying the name of the individual sender, the name of UV, and a telephone number or address at which UV may be contacted;

c. Defendants' conduct, pattern, and practice as it pertains to delivering artificial or prerecorded voice solicitation messages;

d. Mr. Rachmilewitz's responsibility and role in UV's delivery of telemarketing text messages to telephone numbers already registered on the DNC Registry absent prior express written consent;

e. Defendants' violations of the TCPA; and

f. The availability of statutory penalties.

18

84.     A class action is superior to all other available methods for the fair and efficient adjudication of this matter.

85.     If brought and prosecuted individually, the claims of the members of the Classes would require proof of the same material and substantive facts.

86.     The pursuit of separate actions by individual members of the Classes would, as a practical matter, be dispositive of the interests of other members of the Classes, and could substantially impair or impede their ability to protect their interests.

87.     The pursuit of separate actions by individual members of the Classes could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendants.

88.     These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the Classes.

89.     The damages suffered by the individual member of the Classes may be relatively small, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the Classes to redress the wrongs done to them.

90.     The pursuit of Plaintiffs' claims, and the claims of the members of the

Classes, in one forum will achieve efficiency and promote judicial economy.

91.     There will be no extraordinary difficulty in the management of this action as a class action.

92.     Defendants acted or refused to act on grounds generally applicable to the members of the Classes, making final declaratory or injunctive relief appropriate.

**Count I**
**Violation of 47 U.S.C. § 227(c)(5)**
**On behalf of the Federal Do-Not-Call Registry Class**

93.     Plaintiffs repeat and re-allege each and every factual allegation contained in paragraphs 1-92.

94.     A text message is a "call" as defined by the TCPA. *See, e.g.*, *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 280 n.4 (2d Cir. 2020) ("It is undisputed that '[a] text message to a cellular telephone . . . qualifies as a 'call' within the compass of [the TCPA].'") (internal citation omitted); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

95.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

96.     Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

97.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of those regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

98.     UV violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiffs and the class members who registered their respective cellular or residential telephone numbers with the DNC Registry, which is a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

99.     UV violated 47 U.S.C. § 227(c)(5) because it delivered, or caused to be delivered, to Plaintiffs and members of the Federal Do-Not-Call Registry Class, more than one solicitation call or text message in a 12-month period in violation of 47 C.F.R. § 64.1200.

100.    Additionally, as the manager, operator, and owner of UV, and given that Mr. Rachmilewitz personally handles purchase and sale transactions tied to

UV's real estate telemarketing campaigns, Mr. Rachmilewitz directed and controlled UV's decision to deliver telemarketing text messages to Plaintiffs' cellular telephone numbers without prior express written consent, and despite their registry on the DNC Registry.

101.    As a result of Defendants' violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200, Plaintiffs, and the members of the Federal Do-Not-Call Registry Class, are entitled to damages in an amount to be proven at trial.

**Count II**
**Violation of 47 U.S.C. § 227(c)(5)**
**On behalf of the Sender Identification Class**

102.    Plaintiffs repeat and re-allege each and every factual allegation contained in paragraphs 1-92.

103.    A text message is a "call" as defined by the TCPA. *See, e.g.*, *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 280 n.4 (2d Cir. 2020) ("It is undisputed that '[a] text message to a cellular telephone . . . qualifies as a 'call' within the compass of [the TCPA].'") (internal citation omitted); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

104.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(d), provides in relevant part that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone

number or address at which the person or entity may be contacted." *Id.* at § 64.1200(d)(4).

105.   Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

106.   Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of those regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

107.   UV violated 47 C.F.R. § 64.1200(d)(4) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiffs and the class members while failing to "provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."

108.   UV therefore violated 47 U.S.C. § 227(c)(5) because it delivered, or caused to be delivered, to Plaintiffs and members of the Sender Identification Class,

more than one solicitation call or text message in a 12-month period in violation of 47 C.F.R. § 64.1200(d)(4).

109.    Additionally, as the manager, operator, and owner of UV, and given that Mr. Rachmilewitz personally handles purchase and sale transactions tied to UV's real estate telemarketing campaigns, Mr. Rachmilewitz directed and controlled UV's decision to deliver telemarketing text messages to Plaintiffs' cellular telephone numbers without disclosing required identifying information, and further compounded that issue by creating a network of sham websites using fake dbas to further obfuscate their identity.

110.    As a result of Defendants' violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d)(4), Plaintiffs, and the members of the Sender Identification Class, are entitled to damages in an amount to be proven at trial.

### Prayer for Relief

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

a.    Determining that this action is a proper class action;

b.    Designating Plaintiffs as class representatives for the Classes under Federal Rule of Civil Procedure 23;

c.    Designating Plaintiffs' counsel as class counsel under Federal Rule of Civil Procedure 23;

d.   Adjudging and declaring that Defendants violated 47 U.S.C. § 227(c)(5);

e.   Enjoining Defendants from continuing their violative behavior, including continuing to deliver solicitation text messages to telephone numbers registered with the DNC Registry for at least thirty days;

f.   Awarding Plaintiffs and the members of the Classes damages under 47 U.S.C. § 227(c)(5)(B);

g.   Awarding Plaintiffs and the members of the Classes treble damages under 47 U.S.C. § 227(c)(5)(C);

h.   Awarding Plaintiffs and the Classes reasonable attorneys' fees, costs, and expenses under Rule 23 of the Federal Rules of Civil Procedure;

i.   Awarding Plaintiffs and the members of the Classes any pre-judgment and post-judgment interest as may be allowed under the law; and

j.   Awarding such other and further relief as the Court may deem just and proper.

## Demand for Jury Trial

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all triable issues.

Date: April 22, 2025.

*/s/ Alex D. Kruzyk*
Alex D. Kruzyk (TX Bar No. 24117430)
**PARDELL, KRUZYK & GIRIBALDO, PLLC**
7500 Rialto Blvd., Suite 1-250
Austin, Texas 78735
Tel: (561) 726-8444
Fax: (877) 453-8003
akruzyk@pkglegal.com

*Counsel for Plaintiffs and the proposed classes*

Ronald S. Weiss (P48762)
7035 Orchard Lake Road, Suite 350
West Bloomfield, MI 48322
Tel: (248) 737-8000
Fax: (248) 737-8003
Ron@RonWeissAttorney.com

*Local Counsel for Plaintiffs and the proposed classes*